IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LOGAN COLIN DUNCAN | § | |
| (TDCJ No. 1933290), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-711-L-BN |
| | § | |
| THE STATE OF TEXAS, ET AL. | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the undersigned United States magistrate judge for initial screening pursuant to 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sam A. Lindsay. The undersigned issues the following findings of fact, conclusions of law, and recommendation that the Court should summarily dismiss the six defendants named in the complaint but also grant Plaintiff Logan Colin Duncan leave to file an amended complaint against an individual whom he identifies as Major Breeden if he so chooses.

### Background

Plaintiff, then a Texas prisoner, filed this *pro se* civil rights action on or about February 23, 2015, when he was incarcerated at the Lindsey State Jail, in Jacksboro, Texas. *See* Dkt. No. 1. Through this 42 U.S.C. § 1983 action, Plaintiff alleges that six entities – the State of Texas; Johnson County Court; Walker/Sayle Correction Facility; Substance Abuse Felony Program; The Adobe Halfway House; and Acutrace

Laboratory – have violated his constitutional rights. *See id.* And he seeks $507,500.00 in monetary damages. *See* Dkt. No. 3 at 10; Dkt. No. 2 at 11.

Plaintiff has been granted leave to proceed *in forma pauperis*, *see* Dkt. No. 7, and he has been afforded the opportunity to plead his best case by responding to the Court's questionnaire, *see* Dkt. No. 11.

The undersigned now concludes that the Court should summarily dismiss the six defendants named in the complaint but also grant Plaintiff leave to file an amended complaint against an individual whom he identifies as Major Breeden if he so chooses.

## Legal Standards

A district court is required to screen a civil action brought by a prisoner – whether he or she is incarcerated or, instead, detained prior to trial – seeking relief from a governmental entity or employee. *See* 28 U.S.C. §§ 1915A(a), (c). On initial screening, the Court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, that:

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

*Id.* § 1915A(b). Analogously, under 28 U.S.C. § 1915(e)(2)(B), also applicable here, a district court may summarily dismiss any complaint filed *in forma pauperis* – not limited to complaints filed by prisoners seeking relief from a governmental entity or employee – for the same reasons.

An action is frivolous if it lacks an arguable basis in either law or fact. *See*

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) ("A claim may be dismissed as frivolous if it does not have an arguable basis in fact or law."). A complaint is without an arguable basis in law if it is grounded upon an untenable, discredited, or indisputably meritless legal theory, including alleged violations of a legal interest that clearly does not exist. *See Neitzke*, 490 U.S. at 326-27; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

The Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiff must allege more than labels and

conclusions, and, while the Court must accept all of Plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, to survive dismissal under *Twombly* and *Iqbal*, Plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

Although a court generally cannot look beyond the pleadings in determining whether claims should be dismissed on initial screening, the pleadings here include Plaintiff's responses to the Court's questionnaire [Dkt. No. 11], which "become part of a plaintiff's pleadings." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996)).

A district court must generally afford a *pro se* complainant an opportunity to amend before dismissing for failure to state a claim. *See Gregory v. McKennon*, 430 F. App'x 306, 308 (5th Cir. 2011) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)). One of "[t]he primary ways of affording opportunities to bring into focus the factual and legal bases of a prisoners' claims" – and the one predominately utilized by the undersigned – is "requesting a more definite statement from the prisoner through a questionnaire." *Id.* (citing *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994)). Where the Court determines that a *pro se* prisoner has been given an

opportunity to state his best case by, for example, providing responses to a Court-issued questionnaire, the Court may dismiss his complaint – or claims and/or defendants therein – with prejudice. *See, e.g.*, Mitchell v. *Miller-Roach*, No. 3:10-cv-1762-K-BK, 2011 WL 2273509, at *4 (N.D. Tex. May 17, 2011), *rec. adopted*, 2011 WL 2292247 (N.D. Tex. June 8, 2011) (citing *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam); *Cobb v. Simmons*, 373 F. App'x 469, 470 (5th Cir. 2010) (per curiam); *Teel v. Collins*, 59 F.3d 1242, 1995 WL 413135, at *1 (5th Cir. June 21, 1995) (per curiam)); *see also Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993) ("Dismissal with prejudice [is] appropriate if the plaintiff has been given an opportunity to expound on the factual allegations by way of a *Watson[ v. Ault*, 525 F.2d 886 (5th Cir. 1976)] questionnaire."), *abrogated on other grounds by Arvie v. Broussard*, 42 F.3d 249 (5th Cir. 1994).

## Analysis

### The State of Texas

Plaintiff's claim against the State of Texas, through the District Attorney of Johnson County, appears related to a September 2013 petition for a writ of habeas corpus filed by counsel on behalf of Plaintiff. *See* Dkt. No. 3 at 5 ("Johnson County would never allow the hearing. Obviously, a Hearing would have exonerated me."); Dkt. No. 11 at 39-41 (habeas petition). Through his questionnaire responses, Plaintiff contends that, while there is "no apparent evidence" that the Johnson County District Attorney denied the hearing on his habeas petition, the District Attorney "did nothing to prevent the abuse." Dkt. No. 11 at 5.

Any claim that Plaintiff brings against the State of Texas is barred by Eleventh Amendment immunity. *See Cox v. Texas*, 354 F. App'x 901, 902 (5th Cir. 2009) (per curiam) ("Under the Eleventh Amendment, '[a]bsent waiver, neither a State nor agencies acting under its control may "be subject to suit in federal court."'" (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (in turn quoting *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987)))); *see also id.* at 903 ("Neither Texas nor TDCJ has waived its immunity; therefore, Appellees' claims against them are barred by the Eleventh Amendment."). Therefore, any claim against the State of Texas should be dismissed under Sections 1915(e)(2)(B) and 1915A.

To the extent that Plaintiff is suing the Johnson County District Attorney as an agent of the State of Texas, such a claim also should be dismissed because Plaintiff "is seeking damages for past actions." *Nixon v. Texas*, 83 F. App'x 617, 617 (5th Cir. 2003) (per curiam).("Although Nixon's claim is brought against an individual, Judge Green, as an agent of the state, Nixon is seeking damages for past actions. Therefore, Nixon's claim does not meet the *Ex parte Young* exception." (citing *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (to meet the exception to state sovereign immunity under *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect"))).

Furthermore, the Johnson County District Attorney is absolutely immune from

a suit for damages for actions taken within the scope of his duties as a prosecutor. *See Imbler v. Pachtman*, 424 U.S. 409, 420-24 (1976); *see also Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 634 n.2 (5th Cir. 2000) ("As to prosecutors, entitlement [to immunity] flows from performance of activities that are intimately associated with the judicial process, such as initiating and prosecuting a criminal case." (citing *Imbler*, 424 U.S. at 430)). A plaintiff "may overcome a defendant's prosecutorial immunity by alleging actions that fall outside 'initiating the prosecution and in carrying the case through the judicial process.'" *DeLeon v. City of Dallas*, No. 3:02-cv-1097-K, 2003 WL 22244773, at *1 (N.D. Tex. Sept. 16, 2003) (quoting *Boyd*, 31 F.3d at 285), *reversed in part on other grounds*, 141 F. App'x 258 (5th Cir. 2005).

> Prosecutorial immunity, however, applies even if the prosecutor is accused of knowingly using perjured testimony, withholding exculpatory evidence, and failing to make full disclosures of facts. State prosecutors are absolutely immune for their actions intimately associated with the judicial process, including their actions in seeking the issuance of an arrest warrant.

*Id.* (citations and quotation marks omitted); *see Bibb v. Montgomery Cnty. Sheriff*, Civ. A. No. H-13-3736, 2014 WL 3828232, at *8 (S.D. Tex. July 30, 2014) ("[A] prosecutor is entitled to absolute immunity for his action in commencing a prosecution and all actions during the course and scope of the prosecution, even against charges that he acted 'maliciously, wantonly, or negligently.'" (quoting *Imbler*, 424 U.S. at 430-31)).

Plaintiff has failed to allege specific facts to overcome prosecutorial immunity.

Johnson County Court

Plaintiff's claim against the Johnson County Court is that the court "accepted

the Johnson County officials['] ... action[s] at face value most of the time without evidence." Dkt. No. 11 at 6. Plaintiff also claims that this defendant ignored his Freedom of Information Act ("FOIA") request. *See id*; Dkt. No. 3 at 6. Thus, these factual allegations concern actions taken by a court in its judicial capacity and within the scope of its jurisdiction. *Cf. Marsh v. 412th Dist. Court*, Civ. A. No. H-11-1478, 2011 WL 1598168, at *2 (S.D. Tex. Apr. 26, 2011) ("Plaintiff makes no allegations that the state court judges were acting outside their judicial scope or that they acted in complete absence of jurisdiction. Rather, he asserts that their rulings were erroneous because they relied on purportedly fraudulent and perjured summary judgment evidence. Under plaintiff's own allegations, any possible wrongdoing by the state court judges was strictly limited to acts performed in their judicial capacity.").

Judges generally have absolute immunity for judicial actions taken within the scope of their jurisdiction, which also means judicial officers are generally immune from suits for money damages. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam); *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 221-22 (5th Cir. 2009). "Judicial immunity can be overcome only by showing that the actions complained of were nonjudicial in nature or by showing that the actions were taken in the complete absence of all jurisdiction." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). "A judge's acts are judicial in nature if they are normally performed by a judge and the parties affected dealt with the judge in his judicial capacity." *Id.* at 285 (internal quotation marks omitted).

Judicial immunity is not defeated because, like here, a plaintiff alleges a claim

against the court as an entity rather than against an individual judicial officer. *See Jones v. 7th Judicial Dist. Court*, Civ. A. No. 6:06cv214, 2006 WL 2385287, at *2 (E.D. Tex. Aug. 17, 2006) ("[B]ecause the state district court is a judicial entity, a suit against the court itself, like one against the judge who presides over it, would necessarily be barred by the doctrine of judicial immunity." (citing *Dennis v. Sparks*, 449 U.S. 24, 27 (1980))); *see also Hudson v. Am. Arbitration Assoc., Inc.*, 101 F. App'x 947, 947 (5th Cir. 2004) (per curiam) ("Any equal protection claims against the district court are barred by judicial immunity." (citing *Mireles*, 502 U.S. at 11-12)).

To the extent that Plaintiff is claiming that a state defendant violated Section 1983 by ignoring his FOIA request, such a claim is frivolous because "FOIA applies only to records maintained by agencies within the executive branch of the federal government," *Conlin v. Davis*, Civ. A. No. H-06-3305, 2006 WL 3030717, at *2 (S.D. Tex. Oct. 23, 2006) (citing 5 U.S.C. § 552), and, accordingly, "does not apply to state or local governments," *Heath v. Thomas*, No. 3-99-cv-2277-D, 2007 WL 2229056, at *1 n.1 (N.D. Tex. July 31, 2007) (citing *Davidson v. State of Ga.*, 622 F.2d 895, 897 (5th Cir. 1980)).

Accordingly, Plaintiff's claim(s) against the Johnson County Court and regarding not receiving a response to his FOIA request should be dismissed under Sections 1915(e)(2)(B) and 1915A.

Walker/Sayle Correction Facility

Walker Salye is a unit of the Texas Department of Criminal Justice, located in Breckenridge, Texas. *See* https://www.tdcj.state.tx.us/unit_directory/sy.html (last

accessed Sept. 10, 2015). As such, to the extent that Plaintiff has asserted a claim against this defendant as an entity, the TDCJ has not waived its sovereign immunity, and such a claim is barred by the Eleventh Amendment. *See Cox*, 354 F. App'x at 903; *Shaw v. Collier*, No. 4:08-cv-481-Y, 2009 WL 484212, at *1 & n.10 (N.D. Tex. Feb. 26, 2009) ("the Fifth Circuit has expressly recognized that 'the Eleventh Amendment bars recovering § 1983 monetary damages from TDCJ officers in their official capacity'" (quoting *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (collecting cases))).

Asked to "list each person or entity" associated with Walker/Sayle "that you claim violated your civil rights," Plaintiff points to allegations in his complaint concerning incidents that he contends occurred at Waker/Sayle. *See* Dkt. No. 11 at 7; *see also* Dkt. No. 3 at 7-8.

This lawsuit was filed on or about February 23, 2015, *see* Dkt. No. 3, and it is not clear if the incidents alleged occurred within the two years prior to Plaintiff filing this lawsuit, *see Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987) ("Civil rights actions brought under 42 U.S.C. §§ 1981, 1983, 1985, and 1988 are deemed analogous to Texas tort actions, and therefore, the applicable limitations period is ... two years" (citations omitted)); *accord Shelby v. City of El Paso, Tex.*, 577 F. App'x 327, 331 (5th Cir. 2014) (per curiam).

But, if such a claim is not time-barred, and depending on the extent of Plaintiff's physical injuries, *see Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997) (a prisoner's "injury must be more than *de minimus*, but need not be significant" to raise an excessive force claim); 42 U.S.C. § 1997e(e)), Plaintiff has alleged facts that could

form the basis of a civil rights violation by an individual associated with Walker/Sayle but not named as a defendant – Major Breeden, *see* Dkt. No. 3 at 7 (alleging that Breeden "squeezed [Plaintiff's] right bicep to the point of bruising" and that Breeden "threw [Plaintiff] face-first against the wall, injuring [his] elbow"); *but see* Dkt. No. 11 at 11 (asked to name entities or individuals other than the six named as defendants in his complaint that he claims violated his civil rights, Plaintiff answered "None").

Although Walker/Sayle, the named defendant, should be dismissed under Sections 1915(e)(2)(B) and 1915A, Plaintiff should be granted leave to file an amended civil rights complaint against Major Breeden if he so chooses.

<u>Substance Abuse Felony Program</u>

This defendant is also identified as "the Substance Abuse Felony Service Punishment (SAFP) unit at Walker/Sayle." Dkt. No. 3 at 6. As its name implies, the substance abuse felony program, as described by another federal district court in Texas, is

> a parole-panel imposed special condition that will serve to confine and treat an offender and that requires the offender to participate in a post-release drug or alcohol abuse continuum of care treatment plan when a parole panel renders a finding, following a hearing or proceedings concerning alleged violations under Chapter 146 of the board rules, that the offender is a suitable candidate as determined by the suitability criteria.

*Daugherty v. Stephenson*, No. 6:06cv556, 2007 WL 3132616, at *1 n.1 (E.D. Tex. Oct. 24, 2007) (quoting Tex. Bd. of Pardons & Paroles ("BPP") Policy Statement No. 04-01.07); *see also* BPP Board Policies & Directives, *available at* http://www.tdcj.state.tx.us/bpp/policies_directives/policies_directives.html (last

accessed Sept. 10, 2015) (BPP-POL.146.251 is the current policy statement and contains substantially the same description).

As such, regardless of the jural nature of the program itself, it appears that Plaintiff is suing a program administered by the Texas Board of Pardons and Paroles. And, like the TDCJ, the BPP "is cloaked with Eleventh Amendment immunity from Section 1983 damages claims." *Waller v. Collier*, 297 F. App'x 326, 327 (5th Cir. 2008) (per curiam) (citing *McGrew v. Tex. Bd. of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995)).

Plaintiff's factual allegations concerning the SAFP, moreover, do not state a civil rights violation. Complaints about how the program was administered, that the program administrator was "vindictive" and failed to return his mother's phone call and respond to his FOIA request, and an allegation that his participation in the program caused him to miss out on a job his grandfather found for him, *see* Dkt. No. 3 at 6, do not rise to the level of alleging a plausible constitutional violation.

Therefore, Plaintiff's claims against this defendant should be dismissed under Sections 1915(e)(2)(B) and 1915A.

<u>The Adobe Halfway House</u>

Plaintiff's claims against the Adobe Halfway House concern a search of his person and his room, which resulted in Plaintiff being sent for a hair test by an outside laboratory at his own expense. *See* Dkt. No. 3 at 8-9; Dkt. No. 11 at 9.

Plaintiff has not clearly alleged the basis for this claimed violation of his constitutional rights, but a reasonable conclusion is that he is stating a claim under the

-12-

Fourth Amendment based on an unreasonable search . Thus, it first must be noted that "[p]rison inmates do not have a right of privacy in their cells and the Fourth Amendment proscription against unreasonable searches does not apply to searches of prison cells." *Castillo v. Bowers*, 687 F. Supp. 277, 282 (N.D. Tex. 1988) (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) and noting that "Plaintiff's claim is not cognizable under § 1983" because, "even if jail officials did search Plaintiff's cell, they did not violate Plaintiff's constitutional rights by doing so").

While Plaintiff's room at the halfway house was not a prison cell, on "[the] 'privacy continuum' [that] applies" as an offender "move[s] through the criminal justice system," "convicted felons on conditional release (such as parole, probation or supervised release) ... are not entitled to the full panoply of rights and protections possessed by the general public." *United States v. Dixon*, 546 F. Supp. 2d 1198, 1202 (D. Kan. 2008) (citations omitted); *cf. Johnson v. Owens*, ___ F. App'x ____, No. 14–50627, 2015 WL 2367142, at *2 (5th Cir. May 19, 2015) (per curiam) ("Parole is on the "'continuum" of state-imposed punishments,' falling between imprisonment and probation, and is comparable to supervised release in the federal system. It follows that parolees' First Amendment Rights may be restricted to a degree intermediate to those of prisoners and probationers, and similar to those of offenders on supervised release, but we have not made clear exactly what standard applies." (quoting and citing *Samson v. California*, 547 U.S. 843, 850, 854-55 (2006))).

> "By their status alone," probationers and parolees have only a limited privacy right, one that when weighed against the government's penological interests in restoring rights of liberty in a measured way

> yields to warrantless searches.... It is the status of probationers and parolees that results in their reduced expectation of privacy, a diminished right that could be outweighed by government interests.

*United States v. Ward*, 561 F.3d 414, 419 (5th Cir. 2009) (citing *Samson*, 547 U.S. at 849-50 ("[B]y virtue of their status alone, probationers do not enjoy the absolute liberty to which every citizen is entitled." (in turn quoting *United States v. Knights*, 534 U.S. 112, 119 (2001)))); *see United States v. Huart*, 753 F.3d 972, 975 (7th Cir. 2013) ("Although this court has not considered the appropriate level of privacy to be recognized for inmates of a halfway house, we have little difficulty concluding that Huart lacked both an objective and subjective expectation of privacy extending to either his phone or its contents.... The Supreme Court has held that a suspicionless search of a parolee is reasonable under the Fourth Amendment because "'parole is an established variation on imprisonment of convicted criminals.'"" (quoting *Samson*, 547 U.S. at 850 (in turn quoting *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972)))); *see also Dixon*, 546 F. Supp. 2d at 1202-03 (similar to "[p]risoners in full custody [who] have no Fourth Amendment protection against unreasonable searches within the confines of their prison cells," "parolees[ – there, residing in "[a] halfway house" – ]subject to a mandatory search condition have no reasonable expectation of privacy in their belongings" (citing *Samson*, 547 U.S. at 853)).

In light of this case law, Plaintiff has not stated a plausible Fourth Amendment violation against The Adobe Halfway House, and his claims against this defendant should be dismissed under Sections 1915(e)(2)(B) and 1915A.

<u>Acutrace Laboratory</u>

Plaintiff claims that Acutrace utilized a "completely wrong protocol for hair testing" that he alleges resulted in his "fail[ing] the hair test for amphetamines," which failure subjected him to expulsion from the halfway house. Dkt. No. 3 at 9 ("The positive test is completely false and shows tampering, since I have never, and would never, use hard drugs like methamphetamines.").

Section 1983 affords redress only for conduct committed by a person or entity acting under color of state law – it does not ordinarily involve conduct of a private citizen or corporation. *See Scott v. Moore*, 85 F.3d 230, 233 (5th Cir. 1996); *see also Tawe v. Unknown Psychiatrist*, No. 3:11-cv-1016-M-BK, 2011 WL 2292293, at *1 (N.D. Tex. May 25, 2011), *rec. adopted*, 2011 WL 2292272 (N.D. Tex. June 8, 2011) (summarily dismissing civil rights claims against Baylor Medical Center and its employee); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241-43 (5th Cir. 1999) (generally a private hospital and its employees are not state actors). And private action may be deemed state action, for purposes of Section 1983, only where the challenged conduct "may be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

While "state action may be found where a private party performs a traditional government function," "scientific testing of physical evidence" does not "constitute[] a traditional state function." *Nygren v. Predovich*, 637 F.2d 1083, 1088-89 (D. Colo. 1986) (collecting and distinguishing cases in which state action was found because a party either acted pursuant to a state statute or performed an essential public function –

"laboratory testing does not rise to the level of an essential public function"); *see also Latta v. Chapala*, No. 2:03-cv-41, 2005 WL 2787003, at *8 (N.D. Ind. Oct. 25, 2005) ("As in *Nygren*, Plaintiffs here have set forth no state statute showing that the laboratory testing was required by state law. Thus, in this case, the claimed constitutional deprivation did not result from the exercise of a right or privilege having its source in state authority." (citation omitted)).

The underlying facts in *Nygren* appear similar to the facts alleged by Plaintiff. There, a private laboratory conducted blood tests at the direction of an investigator employed by the Colorado Attorney General. Here, as alleged, it appears that Johnson County referred Plaintiff to Accutrace for substance testing.

The court in *Nygren* further observed that the defendant laboratory may "be deemed to have acted under color of state law and, thus, be found liable under § 1983 for conspiracy if [the lab] agreed with state officials to engage in a prohibited action in violation of plaintiffs' constitutional rights." *Id.* at 1089. But, like Plaintiff here, the plaintiffs there "failed to state factual allegations ... which would establish the existence of any agreement between [the lab] and the state defendants to deprive plaintiffs of their civil rights. Such failure requires dismissal [for failure to state a claim]." *Id.*; *see also Latta*, 2005 WL 2787003, at *9.

Plaintiff's allegations against Accutrace amount to, at most, only a claim for medical negligence, which cannot be remedied in a federal lawsuit under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 332-33 (1986) (due process claims not implicated by state official's negligence); *Fenlon v. Quarterman*, 350 F. App'x 931, 934 (5th Cir.

-16-

2009) ("Mere medical negligence does not give rise to a § 1983 claim[.]"); *see also Thomas v. Glaxo Wellcome, Inc.*, 93 F. App'x 807, 808 (6th Cir. 2007) (per curiam) ("Thomas did not allege that either Glaxo[, the pharmaceutical manufacturer,] or the FDA acted in concert with a state agent. Thus, neither Glaxo nor the FDA is subject to liability under § 1983.").

Because Plaintiff has failed to allege that Accutrace acted under color of state law, his claims against this defendant should be dismiss under Sections 1915(e)(2)(B) and 1915A.

### Recommendation

The Court should summarily dismiss the six defendants named in the complaint but also grant Plaintiff leave to file an amended complaint against an individual whom he identifies as Major Breeden if he so chooses.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 17, 2015

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE